**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LISA D. WILLIAMS,
<u>et</u> <u>al.</u>,

     Plaintiffs,

v.                                             Civil Action No. 3:05cv853

TELESPECTRUM, INC.,

     Defendant.


**MEMORANDUM OPINION**

    This matter is before the Court on Plaintiffs' Motion for Class Certification (Docket No. 25).  For the reasons set forth below, the Motion will be denied.


**BACKGROUND**

    Defendant Telespectrum, Inc. ("TI") operates call centers. The proposed class consists of 38 people who worked for TI,[1] and were fired when TI ran a check of their criminal backgrounds and found what it believed were felony records.

    As part of its business, TI entered into a contract with Verizon in which TI employees at its Norfolk offices would

---
[1] There appears to be confusion about whether some of the proposed class members were denied employment, "provisionally hired" and then fired, or simply fired.  <u>See</u> Plaintiffs' Renewed Memorandum in Support of Class Certification (Docket No. 47) at [unnumbered] 10, 13.  For the purposes of certification, the distinction is immaterial.  Both parties agree that there are 38 potential class members.

provide call center services for Verizon.  The contract between TI and Verizon provided that TI's employees involved in servicing the contract "cannot have a criminal record . . . that would indicate that they present an unreasonable risk to co-workers or property."  See TI's Memorandum in Opposition to Plaintiff's Amended Motion for Class Certification (Docket No. 50), Ex. B at 2 ("General Management Process").

To comply with this contractual provision, TI procured the consumer reports ("reports") from a consumer reporting agency ("CRA") of the employees who were to service the Verizon contract.  For each proposed class member, the reports indicated that the member had been convicted of at least one felony.  TI fired all the proposed class members.  Plaintiffs allege that it was TI's standard practice to provide the reports to the fired employee at the time that the employee was fired.  Plaintiffs also allege that TI, as a standard "practice" vel non, failed to inform the fired employees that the CRA had nothing to do with their firing, and that the CRA could not tell the employees why they were fired.

Plaintiffs brought numerous claims against TI under the Fair Credit Reporting Act ("FCRA").[2]  The action was referred to the Magistrate Judge, and TI moved for summary judgment.  Pursuant to

---

[2]     Plaintiffs also brought a claim of race discrimination, which they have since withdrawn.

the Magistrate Judge's Report and Recommendations (Docket No. 35), the Court granted TI's motion in part and denied it in part. (Docket No. 40).

The Court held an initial class certification hearing on the remaining claims, but due to the parties' confusion about the number of potential class members, it ordered the parties to re-open discovery and re-submit memoranda regarding class certification (Docket No. 43). Now on re-briefing, Plaintiffs move to certify a class of 38 employees who were fired from TI. Plaintiffs' counsel summarized its investigation of the proposed class members and their claims in a spreadsheet attached to Plaintiffs' Memorandum in Support of Renewed Motion for Class Certification. Docket No. 47 at Ex. [unnumbered]. The spreadsheet reveals that consumer reports for more than a dozen of the proposed members listed felony convictions, whereas in fact the proposed members had only misdemeanor convictions. The spreadsheet also shows that at least one proposed class member (Keonna Smith Sedgwick) was re-hired after her report was corrected to show that she had a misdemeanor record rather than a felony record. Id. The spreadsheet also lists approximate lost wages of many of the class members, which range from $2,500 to $40,000 "plus." Id.

On their renewed motion, Plaintiffs seek certification on the following alleged violations of the FCRA:

1. TI violated 15 U.S.C. § 1681b(b)(3)(A) when it failed to provide class members with a copy of their reports <u>before</u> firing them;

2. TI violated 15 U.S.C. § 1681m(a)(2)(B) when it failed to inform class members that the CRA that had provided the reports did not make the decision to fire them, and that the CRA would be unable to tell them why they were fired.

Plaintiffs claim that TI violated these two FCRA subsections both negligently (15 U.S.C. § 1681o) and willfully (§ 1681n). Section 1681n provides that in the event of a willful violation, the plaintiff may recover for punitive damages, actual damages, and statutory damages of up to $1,000 per violation. Section 1681o provides that a plaintiff may recover actual damages in the event of a negligent violation.

Plaintiffs request that the Court certify a class pursuant to Fed. R. Civ. P. 23(b)(3), for three issues: (1) whether TI willfully violated section 1681b or section 1681m, and if so, what (2) statutory and (3) punitive damages to impose pursuant to § 1681n. Plaintiffs would have the Court allow claims for actual damages flowing from any violations to proceed in individual actions, ancillary to the proposed class action.

## DISCUSSION

Plaintiffs have moved for class certification pursuant to Fed. R. Civ. P. 23(b)(3). To be appropriate for certification, the class must satisfy the four certification prerequisites of Rule 23(a) and the certification criteria of Rule 23(b)(3).

## I. Fed. R. Civ. P. 23(a)—Prerequisites

### a. Numerosity

The numerosity prerequisite permits class certification only if the proposed class is so numerous that joinder of all members is impracticable.  In this case, there are two numerosity issues. First, the raw number of proposed class members--38--makes this a borderline case.  Second, TI argues that many of the proposed class members are not in fact members, because they would have been fired in any event, and therefore did not suffer actual damages.

### i.    The 38 Proposed Class Members

The class contemplated here would have 38 members.  This number stands at the threshold of the numerosity requirement. While classes with similar numbers of members have been certified, see, e.g., Rodger v. Elec. Data Sys. Corp., 160 F.R.D. 532, 535 (E.D.N.C. 1995) (certifying class of 25-30), joinder in much larger classes has not been found to be impracticable.  See, e.g., Moore v. Trippe, 743 F. Supp. 201, 211 (S.D.N.Y. 1990) (denying certification in proposed class of 57).

Most of the putative class members apparently live in the vicinity of Norfolk.  However, the record suggests that the putative class members are not sophisticated civil litigants, compare Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 73 (D.N.J. 1993) (joinder not impracticable because

the 123 proposed class members are sophisticated auto dealerships capable of litigating for themselves), and at least some of the putative class members are apparently difficult to locate.  See Spreadsheet, Docket No. 47 at Ex. [unnumbered] (revealing that Plaintiffs' counsel failed to make contact with 14 proposed members).  Compare Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980) (joinder practicable inter alia because all 31 proposed members were easy to locate).  Overall, the putative class, as it is proposed by plaintiffs, meets the numerosity requirement.

### ii.   Defendant's Class-Membership Argument

TI seems to argue that the class is really much smaller than Plaintiffs propose because most of the putative class members' corrected reports were accurate, correctly reported at least one felony, or correctly reported the existence of a criminal record (i.e., reporting felonies where the members really had misdemeanors).  These proposed members, TI argues, would have been fired even if they had had a chance to correct their records.  Therefore, they suffered no actual harm from TI's violation, and therefore, they are not properly members of the class.  As a result the proposed class is much smaller than 38 members, and is insufficiently numerous for certification.  This argument is incorrect, for several reasons.

First, Plaintiffs seek to certify a class only as to statutory and punitive damages under § 1681n.  Requiring a

plaintiff to show <u>actual</u> damages as a precondition to permitting him to assert a claim under a statute that provides for recovery of statutory and punitive damages independent of any actual damages would effectively defeat the remedies that Congress afforded to plaintiffs who can show that a defendant willfully violated the statute.  <u>See</u> <u>Owner-Operator Indep. Driver Ass'n. Inc. v.</u> <u>USIS Commercial Servs., Inc.</u>, 2006 WL 2164661, *2 (D. Colo. July 31, 2006) ("[A] plaintiff who has proven that the defendant willfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages.").[3]

Second, § 1681b(3)(A), which requires TI to provide copies of the consumer report before firing the class members, does not contemplate an accuracy threshold.  Unlike 15 U.S.C. § 1681k, which is designed, according to the language in the statute itself, to ensure that information in consumer reports is "complete and up to date," § 1681K(a)(2),[4] § 1681b contains no such language.  Instead, § 1681b's advanced notice requirement appears designed, according to an interpretation by the Federal Trade Commission ("FTC"), to "allow consumers to discuss reports

---

[3]

This is not to imply that certification of a similar class would be inappropriate under § 1681o, which provides a remedy for actual damages only.  Courts often separate questions of liability and damages, <u>see</u> 5 James Wm. Moore, <u>Moore's Federal Practice</u> § 23.45(b), and in any event certification under § 1681o is not before the Court.

[4]

Some courts have held, without extensive comment, that accuracy is a threshold requirement for § 1681k claims.  <u>See, e.g.</u>, <u>Obabueki v. IBM Corp.</u>, 145 F. Supp. 2d 371, 396 (S.D.N.Y. 2001).

with employers or otherwise respond before adverse action is taken."[5]  Certainly this requirement is designed in part to allow the consumer to correct inaccuracies in the report, but, as the interpretation of the FTC opinion letter suggests, the statute contemplates a wide range of responses beyond correcting inaccuracy--to "discuss" the report, or to "otherwise respond." Such response might include explaining the meaning of an item on the report,[6] or, say, paying an outstanding fine that the report

---

[5]

    Letter of William Haynes to Harold R. Hawkey (Dec. 18, 1997), FTC Informal Staff Letter, at 2 (available at http://www.ftc.gov/os/fcra/hawkeycb.htm). The FTC provides informal staff opinion letters guiding interpretation of the FCRA. Congress has granted the FTC the authority to prescribe trade regulations and other rules in regulation of the FCRA.  Pub. L. No. 106-102 (codified in relevant part at 15 U.S.C. §§ 6801-6809 and §§ 6821-6827).

[6]

    The action at bar is something of a case-in-point for such a possibility.  The TI-Verizon contract provided that employees could not "have a criminal record . . . indicat[ing] that they present an <u>unreasonable risk</u> to co-workers or property." (emphasis added). The contract did not impose a flat bar to employees with criminal records, but rather excluded only those employees with records that indicated an unreasonable risk.  Section 1681b at least would have given the employees here the <u>opportunity</u> to argue that no such risk was presented by the past conviction.  Indeed, at least one class member whose corrected record showed a misdemeanor background appears to have been re-hired.

    This interpretation of § 1681b's purpose is more expansive than Judge Lauck's interpretation in the Report and Recommendations, which concluded that "[p]rior disclosure of the report provides the consumer with the opportunity to correct any inaccuracies in the report."  Report and Recommendations at 10. The language in the FTC opinion letter justifies a broad interpretation.  Also, Judge Lauck was not dealing with the question of whether correcting inaccuracies was the <u>only</u> reason that the report should be provided in advance of firing.

accurately reflected.   In sum, § 1681b's text, and its interpretation by the FTC, indicate that it is not exclusively concerned with accuracy.

Third, § 1681m, which required TI to inform the class members that the CRA had not caused them to be fired and could not tell them why they were fired, is quite removed from the accuracy of the underlying data.   Section 1681m simply requires an employer to inform the employee that the employer, not the CRA, made the firing decision.   There is no suggestion in the text of § 1681m that Congress intended to impose an actual damages threshold to such claims.

For the foregoing reasons, TI's numerosity arguments fail. Accuracy is not a threshold requirement for either of the claims as to which Plaintiffs seek class certification, and thus accuracy is not a consideration in assessing the numerosity component of the class certification issue.

### b. Commonality

The commonality prerequisite permits class certification only if there are one or more questions of law or fact common to the class.   TI argues that there are no common claims here, for two reasons.

First, TI, repeating its arguments in the numerosity section, argues that those class members who would have been fired anyway are not entitled to damages, and therefore do not

have claims, and therefore would not have "common" claims.  The Court rejects this argument for the reasons set forth in the numerosity analysis above.

Second, TI argues that a fact-finder will have to sift through each putative class member's individual actual damages before it makes a finding of damages.  This argument seems to be that, because some part of each class member's claims is unique, the proposed class fails the commonality prerequisite.  This argument misapprehends the nature of the commonality prerequisite.  To satisfy the commonality prerequisite, there need be only a single issue common to the class, and that issue need not predominate in the litigation.  See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993)("[The commonality prerequisite] does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist.").  In certifying class actions, courts often separate issues of damages and liability.  See generally 5 Moore's Federal Practice § 23.45(2)(a).  As a result, "differences in damages among the potential class members do not generally defeat [commonality] if liability is common to the class."  Morris v. Wachovia Secs., Inc., 223 F.R.D. 284, 299 (E.D. Va. 2004).

In this case, Plaintiffs seek certification of a class: (1) to determine whether TI willfully failed to comply with the two FCRA regulations on a class-wide basis; (2) to determine

statutory damages; and (3) to determine punitive damages. Plaintiffs would have actual damages calculated in subsequent individual litigation. As Plaintiffs have conceived the class, liability for the violation, statutory damages, and punitive damages all present questions of fact or law common to the class. These common questions are unaffected by the differences in the individual plaintiffs' actual damages. Common questions of law or fact do exist as to this class, and the commonality prerequisite therefore does not bar certification.

### c. Typicality

TI does not develop an argument for this prerequisite, and indeed, the typicality prerequisite does not appear to bar class certification. The typicality prerequisite focuses on the general similarity of the class representatives' legal and remedial theories to those of the proposed class. See Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986). As Plaintiffs propose certification, the class representatives all claim the same injuries--willful violations of §§ 1681b & 1681m-- as the class. They also seek the same remedies--statutory and punitive damages. The typicality prerequisite therefore does not bar certification of the class claims.

### d. Adequacy of Representation

The adequacy of representation prerequisite requires the Court to be satisfied that "the representative parties will

fairly and adequately protect the interest of the class." This prerequisite has three components that are relevant here.

First, the adequacy prerequisite is similar to the typicality prerequisite in that it seeks to ensure that the named plaintiffs have similar claims to the class, so that they will protect the class in matters germane to the claims in the litigation. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997). This feature of the adequacy prerequisite is addressed in the typicality section.

Second, the adequacy prerequisite looks to the personal characteristics of the named plaintiffs themselves to see whether they are fit representatives. TI does not argue that the named plaintiffs here are unfit representatives, and the record does not suggest otherwise.

Third, the adequacy prerequisite looks to the qualifications of class counsel, an issue which TI does not contest. The adequacy prerequisite therefore does not bar class certification.

## II.  Fed. R. Civ. P. 23(b)(3)--Criteria

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(3). To certify a class under Fed. R. Civ. P. 23(b)(3), it is necessary that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

### a. Predominance

Plaintiffs seek certification of a class that would litigate (1) whether TI willfully violated the FCRA provisions, along with (2) statutory and (3) punitive damages flowing from any willful violations. Plaintiffs would leave litigation of actual damages suffered by each plaintiff to individual, ancillary litigation. The predominance requirement bars such a class from being certified. While common questions of law and fact do indeed exist, the issue of TI's liability for punitive damages to each individual class member would over-shadow the common issues that would be litigated. Common questions of law and fact therefore do not predominate over individual questions, and class certification is inappropriate.

To satisfy Fed. R. Civ. P. 23(b)(3)'s predominance requirement, common questions of law or fact must predominate over questions affecting only individual class members. The common "questions" concern not only matters of factual and legal liability, but questions of damages as well. See generally 5 Moore's Federal Practice § 23.45(2)(b). In certifying class actions, courts often separate issues of damages and liability. See id. at § 23.45(2)(a). However, when issues of liability and individual damages cannot be treated separately and damages require individual calculation, certification is inappropriate. See Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147 (4th Cir.

2001) ("the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability." (citing <u>Windham v. Am. Brands</u>, 565 F.2d 59, 66 (4th Cir. 1977))).

In this case, Plaintiffs would litigate punitive damages--that being, what amount of punitive damages to impose on TI for willful violations of the FCRA--on a class-wide basis.    However, the amount of punitive damages available against TI is constrained by the Constitution's Due Process clause.    In <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), the Supreme Court held that "[punitive] damages must bear a reasonable relationship to compensatory damages . . . ." 517 U.S. at 580.    While the Court has declined to set down a specific compensable-to-punitive damages ratio, it suggested that "[s]ingle-digit multipliers are more likely to comport with due process . . . ." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 425 (2003).    Therefore, to comport with due process, the punitive damages awarded in this action must bear some reasonable relationship to actual damages.

In this case, Plaintiffs propose to litigate statutory and punitive damages together on a class-wide basis.    The statutory damages flowing from each violation are capped at $1,000.    15 U.S.C. § 1681n(a)(1)(A).    Because the Plaintiffs allege two violations of the FCRA, in the class action proper they could achieve a maximum of $2,000 in statutory damages per class member.    Meanwhile, the actual damages that would be at issue in any individual litigation vary widely, and in some cases are many times greater than the maximum statutory damages.    According to

Plaintiffs' class spreadsheet, actual damages, in the form of
lost wages, range from $2,500 to $40,000 "plus" per class
member.[7]  Other class members allege lost wages in a variety of
amounts, including $24,872, $20,290, $12,700, and $13,500 per
class member.

When one applies the due process admonitions of <u>Gore</u> and
<u>State Farm</u> to the claims posited for certification here, a
problem immediately becomes apparent.  At the class action stage,
punitive damages would be measured for due process reasonableness
against statutory damages, which here would be a maximum of
$2,000.  However, punitive damages <u>could</u> be measured for
reasonableness against each plaintiff's individual actual
damages, which allegedly range from $2,500 to $40,000 or more per
person.  Quite clearly, the size of a constitutionally
permissible punitive damage award calculated against individual
members' actual damages has the potential significantly to exceed
the size of a constitutionally permissible punitive damage award
calculated against statutory damages alone. [8]

---

[7]    The spreadsheet does not list other potential sources of
actual damages, such as emotional distress resulting caused by
the loss of employment.

[8]    At the class certification hearing, Plaintiffs' counsel argued
that this potential discrepancy does not actually exist because the
statutory damages contemplated here are minimal, and where
compensatory damages are nominal or minimal, awards with much
higher punitive damages multipliers escape the <u>Gore</u> / <u>State Farm</u>
due process analysis.  The Court finds no support for this
argument.  In this case, the maximum statutory damages award
against which punitive damages would be compared is $2,000 per

This disparity in potential recoveries is not one that exists solely in theory.  The contract between TI and Verizon did not call for an absolute ban on employees with criminal records, but rather provided that employees should be banned if their records suggested an "unreasonable risk" to persons or property, and at least one class member was hired back after her record was corrected to show that a reported felony conviction was actually a misdemeanor.  In this case, many proposed class members, claiming tens of thousands of dollars in lost wages, had misdemeanor records that the reports incorrectly classified as felonies.  Many of the claims for actual damages, therefore, appear to be viable. [9]

As Plaintiffs would have the Court try this action, however, once punitive damages were imposed (or denied) as to the whole class, claim and issue preclusion would bar individual plaintiffs

_____

class member.  The "minimal" damages that skirt under State Farm and Gore due process considerations are considerably smaller.  See, e.g., Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996) (distinguishing Gore (where compensatory damages were $4,000) from the case before it where compensatory damages were $1, and reasoning that "because the compensatory award here was nominal, any appreciable punitive award would produce a ratio that would appear excessive by [the Gore] measure." (emphasis original)). Accord IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 314 (4th Cir. 2003) (treating $10 as nominal damages for purposes of Gore and State Farm); Givens v. O'Quinn, 447 F. Supp. 2d 593, 596 (W.D. Va. 2006) ($1).

[9]

TI acknowledged as much when it argues that for each class member, the Court would need to decide whether "the nature of the crimes . . . indicate[d] [that] the employee pose[d] an unreasonable risk . . . ."  TI's Memorandum in Opposition at 9.

from re-asserting the same punitive damage claims in their individual cases. Those individual plaintiffs with real, viable claims to actual damages would therefore be precluded from seeking the full range of punitive remedies to which they might otherwise be entitled.

In sum, many class members appear to have real, viable claims for actual damages suffered as a result of TI's failure to comply with the FCRA. These actual damages are often ten, and up to twenty times greater than the statutory damages for which each class member is eligible. If punitive damages are tried individually, where they would be measured for constitutional reasonableness against each individual plaintiff's full range of compensatory damages, these individual class members might permissibly be entitled to punitive remedies many times greater than they would be were punitive damages measured only against statutory damages, as they would have to be in the proposed class action.

This discrepancy affects many class members' potential recoveries for punitive damages rather dramatically. As a result, it overshadows the issues common to the class. Individual issues, rather than common issues, therefore predominate this action. Under the predominance requirement, therefore, certification of this class is inappropriate.

**b. Superiority**

Because individual issues predominate in this action, class treatment is not superior to other methods of managing the case: many class members have a significant interest in controlling their own, separate litigation.  This is especially so as each class member faces different calculations of the strength and size of their claims.  See, e.g., Causey v. Pan Am. World Airways, Inc., 66 F.R.D. 392, 399 (E.D. Va. 1975) (denying certification on superiority grounds in part because "[s]ome claimants may well evaluate their chances against certain potential defendants as better than against others.").

Additionally, the Court has the discretion to aggregate the claims in this action by other means that are superior to the class action device.[10]

In sum, litigation of these claims via class action is not a superior method of adjudicating these claims, and class certification is inappropriate.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Docket No. 25) will be denied.

---

[10] For instance, the Court might order the issue of TI's willfulness be consolidated for trial under Fed. R. Civ. P. 42(a), followed by ancillary trials for each plaintiff on actual, statutory, and punitive damages. See, e.g., Hassett v. Modern Maid Packers, Inc., 23 F.R.D. 661, 664 (D. Md. 1959)(deciding, in a case where three plaintiffs sued two defendants for damages arising out of a single accident, to consolidate the case for purposes of liability, and to try damages as to each plaintiff separately).

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                    _____/s/_____
                                          Robert E. Payne
                                    Senior United States District Judge

Richmond, Virginia
Date: June 1, 2007